FILED

2019 OCT 21  PM 1:07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

1  Name: WENBIN WEI
2  Address: 328 S. Sefton Ave #A
3  MONTEREY PARK, CA 91755
4  Phone number: 9178161356
5  Plaintiffs in Pro Per
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10
11  WENBIN WEI, individually and        Case No. **LACV1909031-JAK-SKx**
12  derivatively on behalf of Nominal
13  Defendant, SLS Tranche 1            **SHAREHOLDER DERIVATIVE**
14  Lender LLC,                         **COMPLAINT, RACKTEERING**
15                                      **AND OTHER CAUSE OF ACTION**
16          Plaintiff,
17      vs.                             **JURY DEMAND**
18
19  Stockbridge Capital Group, LLC
20  American Dream Fund, LLC,
21  Celona Asset Management (USA) Ltd
22  Las Vegas Resort Investment Company
23  LLC,
24  Las Vegas Resort Holdings LLC,
25  Henry Global Consulting Group,
26  Pam-America Business Consulting, Ltd
27  SB Gaming LLC;
28  Stockbridge Real Estate Fund II Co-



PAID

OCT 21 2019

Clerk, US District Court
COURT 4612

1

1  Investors LV, LP
2  Stockbridge Real Estate Fund II-A, LP
3  Stockbridge Real Estate Fund II-B, LP
4  Stockbridge Real Estate Fund II-C, LP
5  Stockbridge Real Estate Fund II-T, LP
6  Stockbridge Real Estate Fund II-D, LP
7  Stockbridge Real Estate Fund II-E, LP
8  Stockbridge Real Estate Fund III-A, LP
9  Stockbridge Real Estate Fund III-B, LP
10  Stockbridge Real Estate Fund III-C, LP
11  Las Vegas Resort Intermediate
12  Company LLC
13  Las Vegas Resort Voteco Company,
14  LLC
15  Meruelo Investment Partners LLC
16  Alex Meruelo
17
18          Defendants.
19          and
20  SLS Tranche 1 LENDER LLC
21          Nominal Defendant
22
23                    **COMPLAINT**
24  Plaintiff Weibin Wei (Hereafter "Wei"), pro se, submits this Shareholder
25  Derivative Complaint (the "Complaint") on behalf of nominal Defendant SLS
26  Tranche 1 Lender LLC against defendants named herein to recover $199 million
27  dollars that defendants obtained from SLS Tranche 1 Lender LLC through
28  fraudulent Loan Agreement dated January 30 2014 and Restructuring Support

Agreement dated October 25, 2017.  Plaintiff alleges the following based upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.

## STATEMENT OF FACTS

1.      This is a shareholder's derivative action brought for the benefit of Nominal Defendant SLS Trench I Lenders LLC.  SLS Trench I Lenders LLC, a Delaware limited liability Company, was created to provide a $199 million mortgage loan to the redevelopment of Sahara Hotel and Casino into SLS Las Vegas Hotel and Casino. Based on representation made to SLS Trench I Lenders LLC by Stockbridge Capital Group and SBE Entertainment Group LLC, the developer/borrower of SLS Las Vegas, Stockbridge/SBE Holdings LLC had contributed Developer Equity in amount of $395,200,000 through July 2, 2013. On January 30, 2014 a mortgage loan agreement was entered between Stockbridge/SBE Holdings, LLC and SLS Tranche 1 Lender, LLC. On or about October 25, 2017, Amended and Restated Restructuring Support Agreement was entered to modify Loan Agreement dated January 30, 2014 between SLS Tranche 1 Lender LLC and Las Vegas Resort Investment Company LLC, Las Vegas Resort Holdings LLC, SB Gaming LLC, Stockbridge Real Estate Fund II Co-Investors LV LP, Stockbridge Real Estate Fund II-A LP, Stockbridge Real Estate Fund II-B LP, Stockbridge Real Estate Fund II-C LP, Stockbridge Real Estate Fund II-T LP, Stockbridge Real Estate Fund II-D LP,  Stockbridge Real Estate Fund II-E LP, Stockbridge Real Estate Fund III-A LP, Stockbridge Real Estate Fund III-B LP, Stockbridge Real Estate Fund III-C LP, Las Vegas Resort Intermediate Company LLC, Las Vegas Resort Voteco Company LLC, Meruelo Investment Partners LLC and Alex Meruelo.

2.      According to an Independent Auditor's Report dated March 30 2016

3

1   on Las Vegas Resort Investment Company LLC completed by

2   PricewaterhouseCoopers LLP's office in Las Vegas.  The Independent Audited

3   Report also revealed that SLS Las Vegas had real estate related assets of about

4   $501 million and a combined mortgage loan of $552 million as of December 31,

5   2014. In essence, the developer borrowed 100% financing for renovating and

6   operating SLS Hotel and Casino project with no equity contribution from the

7   developers, contrary to the representation made by Stockbridge Capital Group and

8   SBE Entertainment Group LLC who owns the developer/borrower of SLS Las

9   Vegas, Stockbridge/SBE Holdings LLC ("SLS Las Vegas").

10       3.      The Independent Audited Report also revealed that SLS Las Vegas

11  worked with American Dream Fund, LLC (including its affiliates, "ADF") and

12  Pan-America Business Consulting Limited (including its affiliates, "PABC", and

13  collectively with ADF, the "EB-5 Agents") to raise two tranches of EB-5 capital

14  up to a maximum of $200,000,000 each (respectively, "EB-5 Tranche 2 Facility"

15  for ADF and "EB-5 Tranche 1 Facility" for PABC). With information and belief,

16  PABC is owned and controlled by the owner of Henry Global Consulting that was

17  Plaintiff's immigration broker.  Plaintiff paid about $4,000 to Henry Global for due

18  diligence and referral of a US attorney for his immigration process.  Plaintiff was

19  not aware of the existence of PABC and its agreement with SLS Las Vegas.

20       4.      The Independent Audited Report also revealed that SLS Las Vegas

21  was not in compliance with certain of the covenants contained in the loan

22  agreements with junior lenders. These factors raise substantial doubt about the SLS

23  Las Vegas's ability to continue as a going concern.

24       5.      The Independent Audited Report also revealed that commencing in

25  2013, SLS Las Vegas incurred certain percentage fees on a per annum basis based

26  upon the balances outstanding on the EB-5 Loans as well as a result of the EB-5

27  Agents achieving certain fundraising goals that are payable directly or indirectly by

28  SLS Las Vegas. The fees include the following:

4

1   *(i) The Company incurred certain percentage fees based upon the balance*
2   *outstanding of the EB-5 Loans for the EB-5 Agents' administration of the EB-5*
3   *Loans totaling $7,073,000 and $4,380,229 for the years ended December31, 2015*
4   *and 2014, respectively, which have been included in general and administrative*
5   *expenses in the accompanying consolidated statements of operations. As of*
6   *December 31, 2015, fees payable to the EB-5 Agents totaling $4,935,847 have*
7   *been included in accounts payable and accrued expenses in the accompanying*
8   *consolidated balance sheets. As of December 31, 2014, fees payable to the EB-5*
9   *Agents totaling $441,315 and $891,500 have been included in accounts payable*
10  *and accrued expenses and other long- term liabilities, respectively, in the*
11  *accompanying consolidated balance sheets.*
12  *(ii) The Company incurred certain percentage fees based upon the balance*
13  *outstanding under the EB-5 Loans for migration agent services totaling $134,750*
14  *and $36,606,006 for the years ended December 31, 2015 and 2014, respectively,*
15  *which have been capitalized as deferred financing costs in the accompanying*
16  *consolidated balance sheets. As of December 31, 2015, fees payable totaled*
17  *$35,109,701 and have been included in accounts payable and accrued expenses in*
18  *the accompanying consolidated balance sheets. As of December 31, 2014, fees*
19  *payable totaled $11,343,424 and $33,982,688 and have been included in accounts*
20  *payable and accrued expenses and other long-term liabilities, respectively, in the*
21  *accompanying consolidated balance sheets.*
22  *(iii) The EB-5 Agents earn one-time fees based on the aggregate amount of EB-5*
23  *Loans raised ("Success Fees"). Success Fees totaling $40,000 and $4,345,000 for*
24  *the years ended December31, 2015 and 2014, respectively, were earned by the EB-*
25  *5 Agents and have been capitalized as deferred financing costs in the*
26  *accompanying consolidated balance sheets. As of December 31 ,2015 and 2014,*
27  *$20,000 and $0, respectively, were payable to the EB-5 Agents and have been*
28  *included in accounts payable and accrued expenses in the accompanying*

5

*consolidated balance sheets. Additionally, the Company incurs fees for advisory*
*services for the EB-5 Loans. For the years ended December 31, 2015 and 2014,*
*fees totaling $0 and $300,000, respectively, were paid and have been capitalized*
*as deferred financing costs in the accompanying consolidated balance sheets.*

6.　　This derivative action is brought against its Class A manager American Dream Fund ("ADF") and Class B manager, Celona Asset Management (USA) Ltd ("Celona") along with its business affiliates, Henry Global Consulting and Pam-America Business Consulting, Ltd, seeking to remedy the Defendants' violations of state law,  unconscionable adhesion contracts,  breaches of good faith and fair dealing, and removal of LLC Manager during the period beginning August 1 2014 through the present (the "Relevant Period").

7.　　This derivative action is also brought against SLS Las Vegas and its affiliates of a mortgage loan per the loan agreement dated January 30, 2014 seeking to remedy the Defendants' violations of mortgage fraud as well as mail and wire fraud of paying kickback commissions to LLC members' EB-5 immigration brokers and business affiliates without signed consent during the period beginning January 30, 2014 through the present (the "Relevant Period").

8.　　This derivative action is also brought against the signature parities to the Amended and Restated Restructuring Support Agreement entered on or about October 25, 2017 seeking to remedy the Defendants' violations of unconscionable adhesion contracts during the period beginning October 25, 2017 through the present (the "Relevant Period").

9.　　In addition, Plaintiff has not made a demand on its managers ADF and Celona. ADF and Celona admits that ADF shall receive certain fees funded in part by a reimbursement from SLS Las Vegas, and Celona shall receive certain fees over the term of the Loan of not more than one percent (1%) per annum of the maximum aggregate principal amount of the Loan, funded exclusively by a reimbursement from SLS Las Vegas.  As result of such reimbursement

1    arrangement, ADF and Celona are agents of SLS Las Vegas and owe no fiduciary
2    duties to Plaintiff. For these and other reasons set forth therein, demand would be
3    futile.

4          10.    As a result of the foregoing, the Company has lost collateral pledged
5    against the hotel development and its $199 million mortgage loan extended to SLS
6    Las Vegas can't be repaid in full.  Additionally, the Company has been subjected
7    to ongoing lawsuits from LLC members since November 2017.

9                          **JURISDICTION AND VENUE**

11          11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §
12   1332. There is complete diversity among the parties and the amount in controversy
13   exceeds the sum or value of $75,000, exclusive of interest and costs.

14          12.    This Court is the proper Court because the wrongful conduct, in part,
15   took place in this district.

16          13.    The relief sought by Plaintiff is within jurisdiction of this Court to
17   grant such relief.

18                                **PARTIES**

20          14.    Plaintiff Wenbin Wei is currently and has continuously been a
21   stockholder of SLS Tranche 1 Lender LLC since 2014 when he made $545,000.00
22   in SLS Tranche 1 Lender LLC. Plaintiff is a resident of California.

23          15.    Nominal Defendant SLS Tranche 1 Lender LLC (Hereafter "Phase II
24   Lender") is incorporated under the laws of the State of Delaware and maintains its
25   principal offices in Las Vegas, Nevada. SLS Trench I Lenders LLC, a Delaware
26   limited liability Company, was created to provide a $199 million mortgage loan to
27   the redevelopment of Sahara Hotel and Casino into SLS Las Vegas Hotel and
28   Casino. Plaintiff is a member of Phase II Lender.

16.     Defendant American Dream Fund, LLC (Hereafter "ADF") is incorporated under the laws of the state of California and has its principal offices in El Segundo, California.  ADF is Class A Member and Class A Manager of Phase II Lender.

17.     Defendant Celona Asset Management (USA) Limited (Hereafter "Celona") is incorporated in Hong Kong. Celona is the Class B Manager of several EB-5 investment funds in the US, including SLS Tranche 1 Lender, LLC. Pursuant to the Class B Management Agreement, Celona shall receive certain fees over the term of the Loan made by SLS Tranche 1 Lender, LLC exclusively funded by the developer of SLS Las Vegas.

18.     Defendant Stockbridge Capital Group, LLC (Hereafter "Stockbridge") is incorporated under the laws of the state of Delaware and is a registered foreign corporation with in the state of California with its principal executive offices in San Francisco California. Stockbridge is the owner and operator of the hotel and casino development through Las Vegas Resort Investment Company LLC and other investment funds and business entities including Defendants Las Vegas Resort Holdings LLC, SB Gaming LLC, Stockbridge Real Estate Fund II Co-Investors LV LP, Stockbridge Real Estate Fund II-A LP, Stockbridge Real Estate Fund II-B LP, Stockbridge Real Estate Fund II-C LP, Stockbridge Real Estate Fund II-T LP, Stockbridge Real Estate Fund II-D LP,  Stockbridge Real Estate Fund II-E LP, Stockbridge Real Estate Fund III-A LP, Stockbridge Real Estate Fund III-B LP, Stockbridge Real Estate Fund III-C LP, Las Vegas Resort Intermediate Company LLC, Las Vegas Resort Voteco Company LLC and SB Gaming.

19.     Defendant Las Vegas Resort Investment Company LLC and Las Vegas Resort Holding LLC, formerly known as Stockbridge/SBE Investment Company, LLC and Stockbridge/SBE Holdings LLC respectively (Hereafter "SLS Las Vegas") are incorporated under the laws of the State of Delaware and have the

8

principal offices in Las Vegas, Nevada.  SLS Las Vegas is the former owner, developer and operator of the SLS Las Vegas Hotel and Casino.

20.     Defendant Henry Global Consulting is an immigration consulting business operating in China, Canada, and Alhambra, California (Hereafter "Henry Global"). Defendant Henry Global operates several offices in China designed to market and solicit investors for numerous EB-5 immigrant investor programs in the United States.  Their Alhambra office is used to provide their services in the United States. Pursuant to unknown agreement SLS Las Vegas paid certain fees based upon the balance outstanding under the EB-5 Loans for migration agent services. With information and belief, the owners of Henry Global also own and control Celona, Pan-America and Goldstone Advisors Limited, the latter received more than $22 million dollars in wire transfers out of Phase II Lender's bank account. The loan agreement between SLS Las Vegas and Phase II Lender referenced fees paid to Goldstone Advisors as a management fee pursuant to an unknown management fee agreement. With information and belief, Class B Manager of Phase II Lender, Celona is owned and controlled by owners of Henry Global.

21.     Defendant Pan-America Business Consulting Limited is an entity of unknown form (Hereafter "Pan-America"). SLS Las Vegas worked with Pan-America as the "EB-5 Agents" to raise $199,000,000 of EB-5 capital from Phase II Lender. Pursuant to unknown agreement, SLS Las Vegas paid certain fees based upon the balance outstanding of the EB-5 Loans for the EB-5 Agents' administration of the EB-5 Loans to Pan-America even though there is supposed to be a Class B Management Agreement with Celona.  With information and belief, both Celona and Pan-America are owned and controlled by the owners of Henry Global.

22.     In this case, Defendant Henry Global was retained by Defendants ADF and SLS Las Vegas to market and solicit investors for the Phase I Lender and

Phase II Lender.  In exchange for these efforts, Defendant Henry Global has charged Plaintiff and fellow members of Phase II Lender about $5,000 for due diligence and referral of US attorney at the same time receiving kickbacks from SLS Las Vegas without informing Plaintiff and other members of any kickback payment arrangement by either SLS Las Vegas or Class B Manager, Celona. However, the audited financial records of SLS Las Vegas set forth in specific detail that Defendant Henry Global has been paid more than $50 million dollars for commissions and fees and is owed another $50 million dollars.  This money has been paid in party to Goldstone Advisor Limited.

23.    Meruelo Investment Partners LLC (Hereafter "Meruelo Partner") is incorporated under the laws of the state of Nevada and is a registered foreign corporation with in the state of California with its principal executive offices in Downey California. Meruelo Partner is the current owner and operator of SLS Hotel and Casino in Las Vegas

24.    Alex Meruelo is an individual and resident of California. Alex Meruelo is the CEO of Meruelo Partners.

**The RICO Enterprise**

25.    For any Racketeer Influenced and Corrupt Organization case, it is important to distinguish between legitimate organizations, businesses, and even government offices and the abuse of those entities for illegal purposes by the unofficial, corrupt "enterprise."

26.    This pattern of illegal activities committed by the Defendants, the "Predicate Acts," discussed below, were done with the purpose of financial gain at the expense of Phase II Lender as well as Plaintiff and fellow members and were done within the past ten (10) years and continuing.

27.    By the acts alleged herein, Defendants, each and every one of them,

10

1   jointly and severally, have aided and abetted and conspired to violate US business

2   laws, through their ongoing criminal enterprise as set forth below.

3       28.    The law presumes generally that people intend the obvious results of

4   their actions.

5

6   **FIDUCIARTY DUTIES & UNJUST ENRICHMENT OF ADF & CELONA**

7

8       29.    By reason of their positions as Class A and Class B managers of

9   Phase II Lender, ADF and Celona during the Relevant Period and because of their

10  ability to control the business and corporate affairs of Phase II Lender, ADF and

11  Celona owe Plaintiff and other members fiduciary obligation of good faith, loyalty

12  and candor, and were and are required to use their utmost ability to control and

13  manage Phase II Lender in a fair, just, honest and equitable manner.

14      30.    ADF and Celona owe to Phase II Lender and its members the

15  fiduciary duty to exercise good faith and diligence in the administration of Phase II

16  Lender's affairs and in the use and preservation of its property and assets, and the

17  highest obligations of fair dealing.

18      31.    ADF and Celona by virtue of their positions as managers owed Phase

19  II Lender and to its members the fiduciary duty of loyalty, good faith and the

20  exercise of due care and diligence in the management and administration of the

21  affairs of Phase II Lender, as well as in the use and preservation of its property and

22  assets. The conduct of ADF and Celona complained of herein involves a knowing

23  and culpable violation of their obligations as managers of Phase II Lender, the

24  absence of good faith on their part and a reckless disregard for their duties to Phase

25  II Lender and its shareholders that ADF and Celona were aware or should have

26  been aware posed a risk of serious injury to Phase II Lender.

27      32.    ADF and Celona were and are required to act in furtherance of the

28  best interests of Phase II Lender, not the interest of Stockbridge, SLS Las Vegas

1  and Meruelo Partners. ADF and Celona breached their duties of loyalty, care and

2  good faith by 1) ADF and Celona have done by extending loan to SLS Las Vegas

3  without any equity contribution in 2014;  2) by agreeing to the Restructuring

4  Support Agreement against objections by LLC members in October 2017 that

5  converted a mortgage loan made by Phase II Lender into equity investment at risk

6  of total loss.; 3) by not engaging independent legal counsel and SEC registered

7  investment advisors in managing corporate affairs; 4) by being taking

8  compensation from and acting as agent for SLS Las Vegas in addition to about $18

9  million.

10

11  ## GOOD FAITH AND FAIR DEALING & ADHESION CONTRACT

12  ## BY STOCKBRIDGE, ADF, HENRY GLOBAL, MERUELO PARTNERS

13

14  33.    By entering a mortgage loan agreement with Phase II Lender,

15  Stockbridge and SLS Las Vegas in January 2014, Stockbridge and SLS Las Vegas

16  owe Phase II Lender duties of good faith and fair dealing. Phase II Lender made a

17  mortgage loan of $199 million dollars with expectation to be paid in full in January

18  2019 at 0.5% interest. Instead of fulfil its obligation to pay off the mortgage loan

19  upon sale or refinance, Stockbridge and SLS Las Vegas breached the contract and

20  orchestrated an unverified sale to Alex Mereulo and his Meruelo Partners and

21  forced Phase II Lender to consent to Restructuring Support Agreement on October

22  25, 2017 to convert the mortgage loan into equity contribution to new owner of

23  SLS Hotel and Casino without any guarantee of full repayment of $199 million

24  dollars.

25  34.    Prior to enter a mortgage loan agreement with Phase II Lender,

26  Stockbridge and SLS Las Vegas made a representation that they had made cash

27  equity of $359.2 million dollars to the development of SLS Hotel and Casino

28  through July 2, 2013.  Such representation was false. According to an Independent

1   Auditor's Report dated March 30 2016 on Las Vegas Resort Investment Company

2   LLC completed by PricewaterhouseCoopers LLP's office in Las Vegas revealed

3   that SLS Las Vegas had real estate related assets of about $501 million and a

4   combined mortgage loan of $552 million as of December 31, 2014. In essence

5   Stockbridge and SLS Las Vegas borrowed 100% financing for renovating and

6   operating SLS Hotel and Casino project with no equity contribution from

7   Stockbridge and SLS Las Vegas.

8       35.    In connection with mortgage loan agreement with Phase II Lender,

9   Stockbridge and SLS Las Vegas failed to disclose to Phase II Lender and its

10  members fee payment agreement with Henry Global and its affiliates, Celona and

11  Pan America.  Between 2014 and 2018, Stockbridge and SLS Las Vegas have paid

12  Henry Global more than $50 million dollars for commissions and fees and owe

13  Henry Global another $50 million dollars.  This money has been paid in party to

14  Goldstone Advisor Limited.  Henry Global is the immigration agent for Plaintiff

15  and fellow members of Phase II Lender.  Plaintiff and fellow members relied on

16  due diligence provided by Henry Global to make investment decision. The fee

17  agreement between Stockbridge and SLS Las Vegas and Henry Global have

18  sabotaged investment decision process of members of Phase II Lender with

19  intention to fraudulently induce them to invest in Phase II Lender and in turn Phase

20  II Lender makes a loan of $199 million dollars to Stockbridge and SLS Las Vegas.

21      36.    Stockbridge and SLS Las Vegas as well as Henry Global enriched

22  themselves in connection with mortgage loan agreement with Phase II Lender. An

23  audited financial report dated March 2016 revealed that Henry Global has been

24  paid more than $50 million dollars for commissions and fees and Henry Global is

25  owed another $50 million dollars.  Through management contracts, Stockbridge

26  through its business affiliates received $80.3 million dollars and $61.6 million

27  dollars in management fees. In perspective, the revenue from hotel operation in

28  2015 and 2014 was $51 million dollars and $19 million dollars respectively.  To

avoid repayment of mortgage loans of $399 million dollars made by Phase I Lender and Phase II Lender, Stockbridge and SLS Las Vegas, with assistance from ADF and Henry Global, sold the SLS Hotel and Casino to Alex Mereulo and his Meruelo Partners for $195 million dollars by writing off $399 million loans from by Phase I Lender and Phase II Lender. The enrichment of Defendants Stockbridge and SLS Las Vegas, Henry Global, Alex Mereulo and his Meruelo Partners came at the expense of Phase I Lender and Phase II Lender and their LLC members.

## DAMAGES TO PHASE II LENDER BY DEFENDANTS

37.     Aa a direct and proximate result of Defendants' misconduct and fraud, Phase II Lender has not received repayment of $199 million dollars mortgage loan and accrued interests of about $5 million dollars due on January 1, 2019. Defendants Stockbridge and SLS Las Vegas forced Phase II Lender to convert its loan secured with SLS Hotel and Casino into equity investment with no recovery of $199 million dollars.

38.     The conversion of mortgage loan into equity investment has met with objection from Plaintiff and other members of Phase II Lender.  About 60 members filed a legal action against Defendants and Phase II Lender in California on November 30, 2017.  Phase II Lender has to spend time and money to defend lawsuits from angry members.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

39.     Plaintiff brings this action derivatively in the right and for the benefit of Phase II Lender to redress injuries suffered, and to be suffered, by Phase II Lender as a direct result of breaches of fiduciary duty and unjust enrichment by ADF and Celona.

14

40. Plaintiff is a shareholder of Phase II Lender, was a shareholder of Phase II Lender at the time of the wrongdoing alleged herein, and has been a shareholder of Phase II Lender continuously since that time.

41. Plaintiff will adequately and fairly represent the interests of Phase II Lender and its shareholders in enforcing and prosecuting its rights.

42. Phase II Lender is named as a nominal defendant in this case solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have. Prosecution of this action, independent of Class A and Class B Managers, is in the best interests of Phase II Lender.

43. The wrongful acts complained of herein subject, and will continue to subject, Phase II Lender to continuing harm because the adverse consequences of the actions are still in effect and ongoing.

44. The wrongful acts complained of herein were unlawfully concealed from Phase II Lender's members.

45. Throughout the Relevant Period, Defendants failed to make full and fair disclosure about Defendants Stockbridge and SLS Las Vegas' actual equity contribution to the development of SLS Hotel and Casino in Las Vegas as well as excessive fees paid to each defendant which lead to operating loss of SLS Las Vegas.

46. As a result of the facts set forth herein, Plaintiff has not made any demand on the Class A and Class B Managers, ADF and Celona, to institute this action since demand would be a futile and useless act because defendants ADF and Celona are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action. The wrongful acts complained of herein show multiple breaches by ADF and Celona of their fiduciary duties of loyalty and due care.

47. Demand upon Class A and Class B Managers, ADF and Celona, is futile because the Managers are already predisposed to refuse a demand as

1   demonstrated by Class A and Class B Managers, ADF and Celona's position on

2   the merits of the Legal Action BC 685035 filed by 60 members in November 2017,

3   whose allegations also form the basis, in part, of liability in the instant litigation.

4       48.   Thus, because Class A and Class B Managers, ADF and Celona, have

5   already determined that they believe that the allegations in the Legal Action BC

6   685035 are without merit, and because the instant action is substantially based on

7   the same and/or similar misconduct as the Legal Action BC 685035, Defendants

8   ADF and Celona are incapable of making an independent and disinterested

9   decision to institute and vigorously prosecute this derivative action.

10      49.   Based on the foregoing, defendants ADF and Celona knew that Phase

11  II Lender would suffer huge loss as result of SLS Las Vegas's sale to Meruelo

12  Partners and ADF and Celona breached their fiduciary duties by failing to carry out

13  the dissent to Restructuring Support Agreement sent by members of Phase II

14  Lender. As such, Defendants ADF and Celona face a substantial likelihood of

15  liability rendering demand upon them as futile.

16      50.   Based on the foregoing, Defendants ADF and Celona's failure to

17  observe dissents to Restructuring Support Agreement sent by members of Phase II

18  Lender due to the capital loss by Phase II Lender and agreed to the Restructuring

19  Support Agreement only to advance the interests of Stockbridge and SLS Las

20  Vegas constitute bad faith and accordingly ADF and Celona face a substantial

21  likelihood of liability rendering them incapable of independently exercising their

22  business judgment and demand futile.

23      51.   Defendants ADF and Celona's conduct described herein and

24  summarized above demonstrates a pattern of misconduct that could not have been

25  the product of legitimate business judgment as it was based on intentional,

26  reckless, and disloyal misconduct. Thus, Defendants ADF and Celona can't claim

27  exculpation from their violations of duty pursuant to Operating Agreement of

28  Phase II Lender. As Defendants ADF and Celona face a substantial likelihood of

1  liability, they are self-interested in the transactions challenged herein and cannot be
2  presumed to be capable of exercising independent and disinterested judgment
3  about whether to pursue this action on behalf of the members of Phase II Lender.
4      52.    Based on the foregoing, Defendants ADF and Celona face a
5  sufficiently substantial likelihood of liability and accordingly, there is a reasonable
6  doubt as to anyone of Defendants ADF and Celona disinterestedness in deciding
7  whether pursuing legal action would be in the best interest of Phase II Lender.
8  Accordingly, demand upon Defendants ADF and Celona is excused as being futile.
9
10  **CAUSES OF ACTION – COUNT I**
11  **(Against Defendants ADF and Celona for Breach of Fiduciary Duty and**
12  **Unjust Enrichment)**
13
14      53.    Plaintiff incorporates by reference and realleges each of the foregoing
15  allegations as though fully set forth herein.
16      54.    Defendants ADF and Celona owed and owe fiduciary obligations to
17  Phase II Lender, including the obligations of good faith, fair dealing, loyalty and
18  care. Defendants ADF and Celona breached their duties of loyalty, care and good
19  faith by: 1) extending loan to SLS Las Vegas in 2014 without any equity
20  contribution by Stockbridge and SLS Las Vegas;  2) by agreeing to the
21  Restructuring Support Agreement against objections by LLC members in October
22  2017 that converted a mortgage loan made by Phase II Lender into equity
23  investment at risk of total loss.; 3) by not engaging independent legal counsel and
24  SEC registered investment advisors in managing corporate affairs; 4) by being
25  taking compensation from and acting as agent for SLS Las Vegas in addition to
26  receiving about $18 million in administrative fees paid by each member of Phase II
27  Lender.
28

**CAUSES OF ACTION – COUNT II**

**(Derivatively Against Defendants ADF & Celona for Gross Mismanagement)**

55.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

56.    By their actions alleged herein, Defendants ADF and Celona, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Phase II Lender.

57.    As a direct and proximate result of Defendants ADF and Celona's gross mismanagement and breaches of duty alleged herein, Phase II Lender has sustained significant damages.

58.    As a result of the misconduct and breaches of duty alleged herein, Defendants ADF and Celona are liable to Phase II Lender.

**CAUSES OF ACTION – COUNT III**

**(Against Defendants ADF and Celona for Removal of LLC Managers)**

59.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

60.    Defendants ADF and Celona twice submitted notices to Plaintiff and fellow members requesting their consent to the modification of the Loan. On both occasions, Plaintiff and fellow members overwhelmingly or unanimously voted against Defendants ADF and Celona's proposed course of action.

61.    On a third occasion, Henry Global used threats to press fellow members for approval and only then unaudited majority of consent was announced to approve the modification of the Loan.

62.    Defendants ADF and Celona have committed numerous acts of fraud

and breaches of fiduciary duties, as detailed above. Defendants ADF and Celona have committed acts of disloyalty. Defendants ADF and Celona have acted in bad faith and committed gross negligence.

63.    Defendants ADF and Celona take compensation from and acting as agent for SLS Las Vegas in addition to receiving about $18 million in administrative fees paid by each member of Phase II Lender. Such conflict of interests was forced upon Plaintiff and fellow members through conscionable adhesion Operating Agreement Plaintiff and fellow members was induced to sign on the signature pages when Henry Global intentionally withheld offering documents and Operating Agreement and intentional prevented Plaintiff and fellow members to seek representation by US attorneys to review them during investment process.

64.    Defendants ADF and Celona can no longer effectively manage Phase II LENDER and must be removed.

65.    The Delaware LLC Act allows for the removal of an LLC manager.

66.    In light of the numerous breaches of fiduciary duties and fraud committed by Defendants ADF and Celona, the removal of Defendants ADF and Celona must be accomplished post haste to stem further damage to Phase II Lender and Plaintiff.

67.    Plaintiff will seek an injunction implementing the removal of Defendants ADF and Celona as managers of Phase II Lender.

## CAUSES OF ACTION – COUNT IV
**(Derivatively Against All Defendants for Fraud and Unconscionable Adhesion Contracts)**

68.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

19

69.     Defendants Stockbridge and SLS Las Vegas entered an agreement with ADF and Pan America to raise $199 million dollars from investors in China. Defendants Stockbridge and SLS Las Vegas knew and should have known Pan America is alter ego of the owner of Henry Global, the immigration agent for Plaintiff and fellow members of Phase II Lender. Defendants Stockbridge and SLS Las Vegas knew and should have known that Henry Global owed loyalty to Plaintiff and fellow members of Phase II Lender.  Stockbridge and SLS Las Vegas failed to disclose to Phase II Lender and its members fee payment agreement with Henry Global and its affiliates, Celona and Pan America. Stockbridge and SLS Las Vegas intentionally created conflict of interests to harm Plaintiff and fellow members of Phase II Lender.

70.     As a direct and proximate result of Defendants' misrepresentation and omission, Plaintiff and fellow members relied upon due diligence provided by Henry Global, and were induced to sign unconscionable adhesion investment agreements, including Operating Agreement to invest with Phase II Lender while representation by US attorney being withheld by Henry Global. Plaintiff and fellow members have sustained significant damages.

71.     Prior to entering a mortgage loan agreement with Phase II Lender, Defendants Stockbridge and SLS Las Vegas made a representation that they had made cash equity of $359.2 million dollars to the development of SLS Hotel and Casino through July 2, 2013.  Such representation was false. According to an Independent Auditor's Report dated March 30 2016 on Las Vegas Resort Investment Company LLC completed by PricewaterhouseCoopers LLP's office in Las Vegas revealed that SLS Las Vegas had real estate related assets of about $501 million and a combined mortgage loan of $552 million as of December 31, 2014. In essence Stockbridge and SLS Las Vegas borrowed 100% financing for the SLS Las Vegas development with no equity contribution from Stockbridge and SLS Las Vegas. Phase II Lender has sustained significant damages.

## CAUSES OF ACTION – COUNT IV

**(Derivatively Against All Defendants for Mortgage Fraud and Aiding Mortgage Fraud)**

72.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

73.     Stockbridge and SLS Las Vegas entered a mortgage loan agreement of $199 million dollars with Phase II Lender to be paid in full in January 2019 at 0.5% interest. Instead of fulfil its obligation to pay off the mortgage loan upon sale or refinance, Stockbridge and SLS Las Vegas breached the contract and orchestrated an unverified sale to Alex Mereulo and his Meruelo Partners and forced Phase II Lender to consent to Restructuring Support Agreement on October 25, 2017 to convert the mortgage loan into equity contribution to new owner of SLS Hotel and Casino without any guarantee of repayment of $199 million dollars.

74.     Prior to enter a mortgage loan agreement with Phase II Lender, Stockbridge and SLS Las Vegas made a representation that they had made cash equity of $359.2 million dollars to the development of SLS Hotel and Casino through July 2, 2013.  Such representation was false. According to an Independent Auditor's Report dated March 30 2016 on Las Vegas Resort Investment Company LLC completed by PricewaterhouseCoopers LLP's office in Las Vegas revealed that SLS Las Vegas had real estate related assets of about $501 million and a combined mortgage loan of $552 million as of December 31, 2014. In essence Stockbridge and SLS Las Vegas borrowed 100% financing for renovating and operating SLS Hotel and Casino project with no equity contribution from Stockbridge and SLS Las Vegas.

75.     As a direct and proximate result of Defendants' engagement in mortgage fraud, Phase II Lender has sustained significant damages.

1

## CAUSES OF ACTION – COUNT V

2 **(Derivatively Against All Defendants for Mail Fraud and Wire Fraud of**

3 **Racketeering)**

4

5       76.     Plaintiff incorporates by reference and re-alleges each and every

6 allegation contained above, as though fully set forth herein.

7       77.     There are 5 elements of a Claim under § 1962(c): 1) That an

8 enterprise existed; 2) That the enterprise affected interstate or foreign commerce;

9 3) That the defendants were associated with or employed by the enterprise; 4) That

10 the defendants engaged in a pattern of racketeering activity or the collection of an

11 unlawful debt; and 5) That the defendants conducted or participated in the conduct

12 of the enterprise through that pattern of racketeering activity.

13       78.     Each Defendant is a "person" capable of holding legal or beneficial

14 interest in property within the meaning of 18 U.S.C. § 1961 (3).

15       79.     Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in

16 the prior paragraphs, and as further described below.

17       80.     Definition of the Enterprise - Defendants Stockbridge, ADF and

18 Henry Global, together with (1) the Stockbridge -controlled companies, (2) Henry

19 Global-controlled companies, (3) ADF-controlled companies, (4) employees,

20 officers and directors of Stockbridge -controlled companies, (5) employees,

21 officers and directors of Henry Global-controlled companies, and (6) employees,

22 officers and directors of Henry Global-controlled companies, form an association-

23 in-fact for the common and continuing purpose to converting investment owned by

24 Plaintiff and Phase II Lender and constitute an enterprise within the meaning of 18

25 U.S.C. § 1961(4).  These people formed the enterprise characterized by (1) a

26 common purpose, 2) an ongoing formal or informal organization, and 3) members

27 of the enterprise functioned as a continuing unit with an ascertainable structure

28 separate and distinct from that of the conduct of the pattern of racketeering

activity. There may also be other members of the enterprise who are unknown at this time.  The enterprise continued in an essentially unchanged form since 2013 when Stockbridge engaged ADF and Henry Global to raise up to $400 million dollar for the renovation of former Sahara Hotel and Casino.

81.    Interstate or Foreign Commerce - Each enterprise itself has engaged in, and the racketeering activities of those associated with the enterprise had impact on interstate and foreign commerce.  Defendants induced Plaintiff and fellow members of Phase II Lender, who are foreign investors, to invest in securities sold by Phase I Lender and Phase II Lender to finance the renovation of former Sahara Hotel and Casino in Las Vegas.  Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein, and will continue to do so unless enjoined.  Investment Agreements and money are transferred between Plaintiff and banks controlled by Defendants Stockbridge, ADF and Henry Global based either in the US or overseas.

82.    The racketeering activities were conducted by the defendants, and these acts are those of the enterprise and affected interstate commerce and foreign commerce.

83.    Association with the Enterprise - The Defendants Stockbridge, ADF and Henry Global are associated with or employed by the enterprise. The defendants know the enterprise and understand the nature of the activities of the enterprise.

84.    Pattern of Racketeering Activity. Defendants Stockbridge, ADF and Henry Global engaged in the conduct of their affairs through a continuing pattern of racketeering activity and did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961 (1), 1961 (3), and 1962(c).  Plaintiff has discovered that,  since at least 2014,  the Defendants 1)

23

1   induced Plaintiff to wire $545,000 to accounts controlled by Defendants and to pay
2   transaction based fees to Defendants without full disclosure; 2) entered
3   compensation agreement among Defendants Stockbridge, ADF and Henry Global;
4   3) pay kickback commission and unjustified management fee through wire transfer
5   to banks controlled by Defendants Stockbridge, ADF and Henry Global based
6   either in the US or overseas, to unknown entities of Pan America and Golden
7   Advisors Limited in particular. Defendants used 1) the mails to submit kickback
8   agreements among each other 2) Defendants used interstate "wires" – in
9   connection with the racketeering activity and fraud.  Thus, Defendants violated the
10  mail fraud and wire fraud provision of the federal criminal law.

11          85.     The Defendants conducted or participated in the conduct of the
12  enterprise through that pattern of racketeering activity. The racketeering activity
13  was made possible by Defendants' regular and repeated use of the facilities and
14  services of the enterprise. Defendants had the specific intent to engage in the
15  substantive RICO violation alleged herein.

16          86.     Predicate acts of racketeering activity are acts that are indictable
17  under provisions of the U.S. Code enumerated in 18 U.S.C. §1961(I)(B), as more
18  specifically alleged below. Defendants each committed at least two such acts or
19  else aided and abetted such acts.

20          87.     Relationship among Racketeering Acts The acts of racketeering were
21  not isolated, but rather the acts of Defendants were connected by a common
22  scheme, plan, or motive.  These acts were related in that they had the same or
23  similar purpose and result, participants, victims and method of commission.
24  Further, the acts of racketeering by Defendants have been continuous. There was
25  repeated conduct during a period of time beginning as early as 2013 when
26  Defendant Stockbridge engaged ADF and Henry Global to raise up to $400 million
27  dollars to finance the renovation of former Sahara Hotel and Casino in Las Vegas.
28  and continuing to the present, and there is a continued threat of repetition of such

conduct.

88.     Conducting the Enterprise through a Pattern of Racketeering Defendants used their positions in the enterprise facilitated their commission of the racketeering acts and that the racketeering acts had some impact and effect on the enterprise.  The Defendants were able to commit the acts solely by virtue of their position or involvement in the affairs of the enterprise.

89.     The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity. Rather, they existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of assisting Plaintiff to apply for immigration benefits. Upon information and belief, Defendants have had and do have legitimate business plans outside of the pattern of racketeering activity.

90.     Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

91.     Predicate Act: Use of Mails and Wires to Injure Plaintiff in Violation of 18 U.S.C. §5 1341 and 1343. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1341 and 1343 in that they devised or intended to devise a scheme or artifice to cause Plaintiff and Phase II Lender financial loss by means of false or fraudulent representations or omissions. For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by the US. mails or by private or commercial interstate carriers, or received such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs and signals. The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the

1   ordinary course of business. or that such use could have been foreseen, even if not
2   actually intended. These acts were done intentionally and knowingly with the
3   specific intent to advance Defendants' scheme or artifice.

4        92.    Defendants carried out their scheme in different states and countries
5   and could not have done so unless they used the U.S. mails or private or
6   commercial interstate carriers or interstate wires. In furtherance of their scheme
7   alleged herein, Defendant Stockbridge engaged ADF and Henry Global
8   communicated among themselves and with Plaintiff and other members in
9   furtherance of the scheme to interfere with business relationship between Plaintiff
10   and her clients and cause her financial loss. These communications were typically
11   transmitted by wire (i.e., electronically) and/or through the United States mails or
12   private or commercial carriers. Defendants also transmitted or caused the Letter
13   and Agreements to be transmitted by mail or wire between 2013 and 2018.

14        93.    On or about October 25 2017 Defendants coerced a majority of
15   members of Phase II Lender to sign consent to Restructuring Support Agreement
16   and caused a loss of $199 million dollars for Phase II Lender and loss of $500,000
17   plus interests for Plaintiff and fellow members

18        94.    Defendants committed acts constituting indictable offenses under 18
19   U.S.C. §2314 in that having devised or intended to devise a scheme or artifice to
20   defraud Phase II Lender and Plaintiff by means of false or fraudulent pretenses,
21   representations or promises. Defendants transported or caused to be transported in
22   interstate or foreign commerce money having a value of $5000 or more, which was
23   stolen, converted or taken by fraud. Defendants also committed acts constituting
24   indictable offenses under 18 U.S.C. §2315 in that they received money in excess of
25   $5000, which crossed a State or United States boundary after being stolen,
26   unlawfully converted or taken. The acts of Defendants set forth above were done
27   willfully and with knowledge that the money was stolen, converted or taken by
28   fraud. These acts were done intentionally and knowingly with the specific intent to

1   advance Defendants' scheme or artifice.

2      95.   Continuity of Conduct. Defendants' violations of state and federal law

3   as set forth herein, each of which directly and proximately injured Phase II Lender

4   and Plaintiff, constituted a continuous course of conduct spanning a period from as

5   early as 2013 when Defendant Stockbridge engaged ADF and Henry Global to

6   raise up to $400 million dollars to present, which was intended to obtain money

7   through false representations, fraud, deceit, and other improper and unlawful

8   means. Therefore, said violations were a part of a pattern of racketeering activity

9   under 18 U.S.C. §1961(l) and (5).

10     96.   Upon information and belief, Defendants have conducted and/or

11  participated, directly and/or indirectly, in the conduct of the affairs of the alleged

12  enterprises through a pattern of racketeering activity as defined herein in violation

13  of 18 U.S.C. § 1962(c).

14     97.   The unlawful actions of Defendants, and each of them, have directly,

15  illegally, and approximately caused and continue to cause injuries to Phase II

16  Lender and Plaintiff. Plaintiff seeks an award of damages in compensation for,

17  among other things, $199 million dollars Defendants stole from Phase II Lender

18  when Defendants coerced a majority of members of Phase II Lender to consent to

19  Restructuring Support Agreement on or about October 25 2017 that converted a

20  loan of $199 million dollars secured with SLS Hotel and Casino into unsecured

21  equity contribution to new owners of each of SLS Hotel and Casino, Alex Meruelo

22  and Meruelo Partners with no repayment of $199 million dollars.

23     98.   Plaintiff accordingly seeks an award of three times the damages it

24  sustained, and the recovery of reasonable attorneys' fees and costs of investigation

25  and litigation, as well as any other relief as authorized by statute.

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.    For an order removing ADF and Celona as the manager of Phase II Lender;

2.    Rescission of loan agreement dated January 2014 and Restructuring Support Agreement dated October 25, 2017;

3.    For restitution and special/compensatory damages in the amount of $199 million dollars;

4.    For a disgorgement of all profits from the Defendants' fraud which is estimated to be at least of $100 million dollars;

5.    For an injunction against Defendants prohibiting them engage in the same or similar activity in the future;

6.    For interest, costs, and attorney fees pursuant to statute;

7.    For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demand a trial by jury on all issues so triable.

Dated: October ⎽2⎽1⎽ , 2019

⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽

Wenbin Wei

328 S. Sefton Ave #A

Monterey Park, CA 91755